UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| L.A. LIMOUSINE, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-1112 (VLB) |
| LIBERTY MUTUAL INSURANCE CO, | : | |
| Defendant. | : | September 13, 2007 |

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS [Doc. #40]

The plaintiff, L.A. Limousine, Inc. ("LA Limo"), instituted this action after the defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), disclaimed coverage for two automobile accidents under an automobile fleet insurance policy between the parties. LA Limo's complaint asserts causes of action for 1) breach of the duty to indemnify, 2) a declaratory judgment on its claims indemnity under the policy, 3) breach of the covenant of good faith and fair dealing, 4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes § 42-110 et seq., based on a violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Connecticut General Statutes § 38a-816 et seq., and 5) an independent violation of CUTPA.

Liberty Mutual now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the third, fourth and fifth counts of the complaint for failure to state a claim upon which relief can be granted. For the reasons hereinafter set forth Liberty Mutual's motion to dismiss is DENIED as to the good faith and fair

1

dealing claim, and GRANTED as to the CUIPA and CUTPA claims.

## I. Facts

LA Limo purchased from Liberty Mutual a commercial fleet auto insurance policy that covered the period November 1, 2002 to November 1, 2003. The policy included a premium payment schedule calling for payments in four installments. LA Limo made the first three payments according to the policy's schedule in October, January and March 2003.

On May 8, 2003, Liberty Mutual sent LA Limo a notice of cancellation on the policy claiming LA Limo failed to pay its premium payments. The notice stated that the policy would be cancelled if the total outstanding premium due on the policy, totaling $19,907.30, was not received by June 12, 2003.

On June 3, 2003, LA Limo made its final premium payment in the amount of $12,620.30. LA Limo believed this was the proper payment amount in accordance with the policy's payment schedule. Liberty Mutual deposited the payment prior to the June 12, 2003, cancellation date. Liberty Mutual cancelled the policy without further notice on June 12, 2003.

On September 3, 2003, an LA Limo owned vehicle was in an accident in New York with Howard Shim. LA limo filed a claim with Liberty Mutual who, on September 25, 2003, acknowledged the claim and requested additional information from the driver. On October 3, 2003, a second LA Limo owned vehicle was in an accident. LA Limo again filed a claim with Liberty Mutual.

On October 31, 2003, Liberty Mutual disclaimed coverage on the September

3 accident, claiming that the policy was cancelled on June 12, 2003. On November 6, 2003, Liberty Mutual requested additional information from LA Limo regarding the October 3 accident. On November 10, 2003, Liberty mutual disclaimed coverage on the October 3 accident, again asserting that the policy was cancelled on June 12, 2003. The next day, Liberty Mutual issued a refund check for excess premiums it had collected.

LA Limo filed a complaint with the Connecticut Insurance Department alleging Liberty Mutual wrongfully refused coverage under the policy. In response to an insurance department inquiry, Liberty Mutual claimed it issued "endorsement 14" on the policy on April 11, 2003, that had increased premiums in the amount of $7,287, which payment was never received.

On May 13, 2004, State Farm Mutual Automobile Insurance Company, as subrogee for Shim, filed suit against LA Limo in New York Supreme Court, Rockland County, for damages resulting from the September 3 accident. On August 8, 2004, LA Limo filed a third-party complaint against Liberty Mutual seeking indemnity under the policy. [Doc. #11, Ex. 1]

LA Limo and Liberty Mutual filed cross motions for summary judgment in the New York action. Liberty Mutual claimed LA Limo failed to comply with endorsement 14, justifying its cancellation of the policy. LA Limo countered that it was never notified of endorsement 14, it fully complied with its obligations under the policy, and Liberty Mutual wrongfully disclaimed coverage.

On July 13, 2005, LA Limo initiated this action. [Doc. #1] The court stayed

this action on March 8, 2006, pending resolution of the summary judgment motions in the New York action. [Doc. #19]

On September 12, 2005, the court issued a preliminary ruling on the motions for summary judgment in the New York action. [Doc. #20, Ex. A] Noting an absence of evidence regarding the existence of endorsement 14, the court postponed final ruling on the motions until October 7, 2005, to afford Liberty Mutual an opportunity to prove the endorsement had in fact issued. On May 1, 2006, the court granted LA Limo's motion for summary judgment because Liberty Mutual failed to produce documentary evidence regarding endorsement 14. [Doc. #20, Ex. B]

On May 23, 2006, LA Limo requested the stay be lifted in this action. [Doc. #20] The court lifted the stay on June 22, 2006. [Doc. #22] LA Limo amended its complaint on November 24, 2006. [Doc. #38]

On November 30, 2006, Liberty Mutual filed the current motion to dismiss the good faith and fair dealing, CUIPA and CUTPA claims in the amended complaint. [Doc. #40]

## II. Standard

"In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotation omitted). The pleading shall not be dismissed merely because recovery seems remote or unlikely. Bernheim, 79 F.3d at 321.

In deciding a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

### III. Good Faith and Fair Dealing

Liberty Mutual contends that the facts alleged in count three of the complaint for breach of the covenant of good faith and fair dealing are conclusory and fail to state a claim. Specifically, Liberty Mutual claims that its denial of the plaintiff's insurance claims constitute nothing more than a coverage dispute, absent any showing of bad faith.

LA Limo responds that the pleaded facts show that endorsement 14 never existed. Liberty Mutual fabricated endorsement 14 as a means to disclaim coverage only after LA Limo filed claims for indemnity on the two car accidents. Additionally, Liberty Mutual continued to deny coverage even after it was unable to produce any evidence that endorsement 14 existed in its defense of the New York action. These allegations constitute bad faith under Connecticut law.

5

It is well established that Connecticut recognizes a common law action for breach of the implied covenant of good faith and fair dealing implicit in every contract. Buckman v. People Express, Inc., 205 Conn. 166, 170-71 (1987).

"To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (Conn. 2004) (internal citations omitted). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Habetz v. Condon, 224 Conn. 231, 237 (Conn. 1992).

"While evidence of a mere coverage dispute or mere negligence in an investigation will not demonstrate a breach of good faith and fair dealing, an insurer may not cut off benefits on the basis of unsupported determinations resulting from its arbitrary failure or refusal to properly perform the claims examination function." Uberti v. Lincoln Nat'l Life Ins. Co., 144 F. Supp. 2d 90, 104 (D. Conn. 2001).

LA Limo has sufficiently pleaded facts about the absence of endorsement 14 to put Liberty Mutual on notice of its allegations of bad faith. Liberty Mutual has failed to produce any evidence regarding the existence of endorsement 14

6

prior to its defense of the various lawsuits stemming from the car accidents, yet it continues to deny coverage based on cancellation of the policy pursuant to endorsement 14.

After further discovery and the presentation of evidence, the lack of documentation of endorsement 14 may very well prove to be a clerical error or an act of negligence by Liberty Mutual. However, accepting the allegations in the complaint as true, Liberty Mutual's actions could be viewed as specifically designed in bad faith to deceptively disclaim coverage. Therefore, the motion to dismiss LA Limo's claim for breach of the covenant of good faith and fair dealing must be DENIED.

### IV. CUIPA Through CUTPA

Connecticut court's allow a plaintiff to assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision. Mead v. Burns, 199 Conn. 651, 662-63 (Conn. 1986). Thus, a CUIPA through CUTPA claim, such as in count four of LA Limo's complaint, is predicated upon a violation of CUIPA itself.

Liberty Mutual moves to dismiss LA Limo's CUIPA through CUTPA claim for failure to state a claim under CUIPA. LA Limo's claims in count four of the complaint invoke two separate sections of CUIPA.

First, LA Limo alleges a violation of Connecticut General Statutes § 38a-816(5). That section, titled "False Financial Statements," defines a violation of CUIPA as:

> Filing with any supervisory or other public official, or making, publishing, disseminating, circulating or delivering to any person, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated or delivered to any person, or placed before the public, any false statement of financial condition of an insurer with intent to deceive; or making any false entry in any book, report or statement of any insurer with intent to deceive any agent or examiner lawfully appointed to examine into its condition or into any of its affairs, or any public official to whom such insurer is required by law to report, or who has authority by law to examine into its condition or into any of its affairs, or, with like intent, wilfully omitting to make a true entry of any material fact pertaining to the business of such insurer in any book, report or statement of such insurer.

Conn. Gen. Stat. § 38a-816(5).

LA Limo claims Liberty Mutual's report to the state commissioner of insurance that endorsement 14 existed in the absence of any documentary evidence constitutes "making any false entry in any book, report or statement of any insurer with intent to deceive any agent or examiner lawfully appointed to examine into its condition or into any of its affairs, or any public official to whom such insurer is required by law to report," and entitles it to a separate cause of action and damages. Specifically, "the fact that the disjunctive 'or' is used in the language of the statute is significant, as it clearly shows an intent not to limit the application of this section of the statute to financial statements." [Doc. #42]

LA Limo concedes there is no case law or legislative history supporting its unique reading of § 816(5) to apply outside the realm of financial statements.

In interpreting the text of CUIPA, the Connecticut supreme court has

8

indicated that "[a] narrow construction… is appropriate because CUIPA authorizes the imposition of criminal penalties for the commission of the conduct it proscribes… [A]mbiguity in penal statutes requires a construction limiting rather than expanding civil liability... This principle of statutory construction outweighs inferences derived from punctuation and duplicatory verbiage." Mead, 199 Conn. at 658-59.

It is evident from the title and text of § 816(5) that it is meant to apply only to financial statements and not the case at hand. An alleged misrepresentation to the state insurance commissioner as to an individual policy endorsement falls outside of the intended ambit of § 816(5). LA Limo's reading of the statute is wholly unsupported and its claim must be dismissed.

Secondly, LA Limo claims "Liberty Mutual continuously, and on numerous occasions, disclaimed coverage," violating Connecticut General Statutes § 38a-816(6). That section of CUIPA specifies a violation for "unfair claim settlement practices" when they are "committ[ed] or perform[ed] with such frequency as to indicate a general business practice." Conn. Gen. Stat. § 38a-816(6).

"In requiring proof that the insurer has engaged in unfair claim settlement practices 'with such frequency as to indicate a general business practice,' the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct." Lees v. Middlesex Ins. Co., 229 Conn. 842, 849 (Conn. 1994). In Lees, the court went on to hold "the handling of a

9

single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a 'general business practice' as required by § 38a-816(6)."  Id.; see also Mead, 199 Conn. at 666 (§ 816(6) "reflects the legislative determination that isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention").

Connecticut's appellate courts have not yet decided whether allegations of unfair settlement practices involving multiple factors in the same claim can constitute a violation of § 816(6).  Many trial courts have found the alleged mishandling of various elements of the same claim does not reach the level of a general business practice under CUIPA.  See Fetzer v. Safeco Ins. Co., 2006 Conn. Super. LEXIS 2386 at *2 (Conn. Super. Ct. Aug. 9, 2006); Starview Ventures v. Acadia Ins., 2006 Conn. Super. LEXIS 3109 at *8-9 (Conn. Super. Ct. Oct. 17, 2006); Southridge Capital Mgmt., LLC v. Twin City Fire Ins. Co., 2005 Conn. Super. LEXIS 1537 at *8-11 (Conn. Super. Ct. Jun. 3, 2005); Hebert v. Assurance Co. of Am., 2005 Conn. Super. LEXIS 371 at *7-8 (Conn. Super. Ct. Feb. 9, 2005).

LA Limo has not alleged that Liberty Mutual uses unfair practices to settle the claims of other policyholders, nor that it employed such unfair practices in prior dealings with LA Limo.  The invocation of terms such as "continuously" and "on numerous occasions" can only refer to Liberty Mutual's actions regarding the ongoing dispute over this policy stretching over the last five years.  Liberty Mutual has a right to defend itself against claims asserted in courts of law, and

should not be made fearful of doing so for violating CUIPA's general business practice provision.

Absent any showing that Liberty Mutual employed alleged unfair settlement practices outside the singular insurance policy subject to this dispute, LA Limo's CUIPA through CUTPA claims based on § 816(6) must be dismissed. Accordingly, Liberty Mutual's motion to dismiss count four of the complaint is GRANTED.

## V. CUTPA

Finally, Liberty Mutual moves to dismiss LA Limo's independent CUTPA claim on the grounds that the facts underlying counts four and five are identical.

In order for an independent CUTPA claim to survive dismissal of a CUIPA through CUTPA claim based on the same underlying conduct, a plaintiff must elaborate on that conduct to show an independent violation of CUTPA. See Lees, 229 Conn. at 850-51; Mead, 199 Conn. at 666; Bepko v. St. Paul Fire and Marine Ins. Co., 2005 WL 3619253 at *14-16 (D. Conn., November 10, 2005).

LA Limo's independent CUTPA claim in count five is indistinguishable from its CUIPA through CUTPA claim in count four. The complaint alleges no additional facts in support of the independent CUTPA claim. As a result, based on the dismissal of count four, Liberty Mutual's motion must be GRANTED and count five must also be dismissed.

## VI. Conclusion

Based on the foregoing, the defendant's motion to dismiss is DENIED as to

**count three and GRANTED as to counts four and five of the complaint. LA Limo has alleged facts regarding endorsement 14 that, taken as true, could constitute bad faith sufficient to prove LA Limo violated the covenant of good faith and fair dealing implied in the policy.**

**LA Limo's CUIPA through CUTPA claims in count four of the complaint fail to state a claim upon which relief can be granted. The facts alleged in the complaint, even if true, fail to show Liberty Mutual violated either §§ 816(5) or 816(6) of CUIPA. Further, because LA Limo's independent CUTPA claims in count five of the complaint are based on identical facts as those in count four, the independent CUTPA claim also fails to state a claim.**

                                                **IT IS SO ORDERED.**

                                                  /s/

                                              **Vanessa L. Bryant**

                                              **United States District Judge**

**Dated at Hartford, Connecticut: September 13, 2007.**