UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| L.A. LIMOUSINE, INC., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-1112 (VLB) |
| LIBERTY MUTUAL INSURANCE CO., | : | |
|     Defendant. | : | August 14, 2008 |

### MEMORANDUM OF DECISION AND ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. #118]

The plaintiff, L.A. Limousine, Inc. ("LA Limo"), instituted this action after the defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), disclaimed coverage for two automobile accidents under an automobile fleet insurance policy between the parties. Liberty Mutual now moves for summary judgment because LA Limo's lone remaining claim is precluded by res judicata. For the reasons hereinafter set forth Liberty Mutual's motion for summary judgment is GRANTED.

### I. Facts

The following facts on the record are undisputed. LA Limo purchased from Liberty Mutual a commercial fleet auto insurance policy that covered the period November 1, 2002 to November 1, 2003. On September 3, 2003, an LA Limo owned vehicle was in an accident in New York with Howard Shim. On October 3, 2003, a second LA Limo owned vehicle was in an accident. LA Limo filed claims with Liberty Mutual under the policy.

1

On October 31, 2003, Liberty Mutual disclaimed coverage on the September 3 accident, claiming that the policy was cancelled on June 12, 2003. On November 10, 2003, Liberty mutual disclaimed coverage on the October 3 accident, again asserting that the policy was cancelled on June 12, 2003.

On May 13, 2004, State Farm Mutual Automobile Insurance Company, as subrogee for Shim, filed suit against LA Limo in New York Supreme Court, Rockland County, for property damages resulting from the September 3 accident (the "State Farm case"). [Doc. #134-2] On June 10, 2004, Shim filed a separate action against LA Limo in New York Supreme Court, Rockland County, for personal injuries resulting from the accident. [Doc. #119-4] On August 19, 2004, LA Limo filed third-party complaints against Liberty Mutual seeking indemnity in both New York actions. [Doc. #134-4, 134-5]

On September 22, 2004, LA Limo filed a complaint with the Connecticut Insurance Department regarding Liberty Mutual's disclaim of coverage. [Doc. #134-7] Liberty Mutual's October 6, 2004, answer to the third-party complaint in the Sate Farm case asserted the following affirmative defense: "If third-party defendant ever provided coverage to third-party plaintiffs at any time prior to the alleged happening of the accident, then such coverage was properly cancelled prior to the date of loss." [Doc. #134-6] On October 25, 2004, Liberty Mutual responded to the Connecticut Insurance Department's inquiry regarding LA Limo's complaint. [Doc. #134-8] Liberty Mutual represented that on April 11, 2003, it had mailed endorsement 14 to LA Limo notifying it that premium

payments had increased. Having not received the additional premium payment, on May 8, 2003, Liberty Mutual issued a notice of cancellation effective June 12, 2003, if the delinquent payments were not made. Liberty Mutual did not include any documentary evidence of the existence of endorsement 14.

In February 2005, LA Limo and Liberty Mutual filed cross-motions for summary judgment in the State Farm case. [Doc. #134-9, 134-10] The motions for summary judgment essentially debated one singular issue: did endorsement 14 exist? LA Limo claimed that endorsement 14 never existed, was never sent by Liberty Mutual, and was never received by LA Limo, and it fully complied with its payment obligations under the policy. Its opposition to Liberty Mutual's motion for summary judgment includes a lengthy description of the extensive discovery regarding endorsement 14. [Doc. #134-10] In turn, Liberty Mutual claimed LA Limo ignored endorsement 14 and the policy was rightfully cancelled.

On July 13, 2005, LA Limo initiated this action, asserting claims of: 1) breach of the duty to indemnify; 2) a declaratory judgment regarding the rights and obligations under the policy; 3) breach of the covenant of good faith and fair dealing; 4) violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816, et seq.; and 5) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et seq. [Doc. #1] The court stayed this action on March 8, 2006, pending resolution of the summary judgment motions in the New York action. [Doc. #19]

On September 12, 2005, the court in the State Farm case issued a

preliminary ruling on the motions for summary judgment. [Doc. #134-12] Noting the absence of documentary evidence regarding the existence of endorsement 14, the court postponed final ruling on the motions until October 7, 2005, to afford Liberty Mutual an opportunity to prove the endorsement had in fact issued. On May 1, 2006, the court granted LA Limo's motion for summary judgment in the State Farm case because Liberty Mutual's supplementary production of evidence failed to conclusively prove that endorsement 14 existed and issued. [Doc. #134-15]

The court lifted the stay in this case on June 22, 2006. [Doc. #22] On September 13, 2007, the court granted in part Liberty Mutual's motion to dismiss, dismissing the Connecticut Unfair Insurance Practices Act and Connecticut Unfair Trade Practices Act claims. [Doc. #100] On October 1, 2007, LA Limo voluntarily withdrew its claims for breach of the duty to indemnify and a declaratory judgment regarding the rights and obligations under the policy. [Doc. #112] On October 16, 2007, Liberty Mutual filed the current motion for summary judgment on the lone remaining claim for breach of the covenant of good faith and fair dealing. [Doc. #118]

## II. Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The substantive law governing the case

4

will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

"The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

### III. Discussion

Liberty Mutual moves for summary judgment on LA Limo's lone remaining claim for breach of the covenant of good faith and fair dealing because that claim is barred by the State Farm case under the doctrine of res judicata. "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 265 (2d Cir. 1997) (quoting Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 84 (1984)). As the State Farm case was pursued in New York court, the court must apply New York's law of res judicata in the instant motion.

"Under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation. The rationale underlying this principle is that a party who has been given a full and fair opportunity to litigate a claim should not be allowed to do so again.

6

Additionally, under New York's transactional analysis approach to res judicata, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy. Res judicata is designed to provide finality in the resolution of disputes, recognizing that considerations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation." In re Hunter, 4 N.Y.3d 260, 269-70 (N.Y. 2005) (internal quotations and citations omitted).

Applying New York's law of res judicata, the court finds that LA Limo's claim for breach of the covenant of good faith and fair dealing is clearly barred. Connecticut recognizes a common law action for breach of the implied covenant of good faith and fair dealing implicit in every contract. Buckman v. People Express, Inc., 205 Conn. 166, 170-71 (1987). "To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (Conn. 2004) (internal citations omitted). It is essentially a claim of bad faith based in the law of contracts. Habetz v. Condon, 224 Conn. 231, 237 (Conn. 1992).

This case and the third-party action in the State Farm case are between only LA Limo and Liberty Mutual. Liberty Mutual's disclaim of coverage under the

7

policy is indisputably the subject matter of the two case.  The two cases are nearly identical.  LA Limo undoubtedly could have asserted its bad faith claim in the State Farm case.

The transactional approach to res judicata utilized by the New York courts bars not only claims that could have been raised in the first action, but any claim arising out of the same transaction or set of transactions.  LA Limo's claim for bad faith is based on the same disclaim of converge as the State Farm case, and all additional allegations of bad faith included in this case arose in the context of Liberty Mutual defending itself in the State Farm case.  The only differences between the two cases are that LA Limo advances a new legal theory of recovery in the instant case, and the case was filed at a later point in time allowing LA Limo to collect additional facts to support its claims in this case through discovery in the State Farm case.

This case is strikingly similar to Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261 (2d Cir. 1997).  In that case, an insured brought an action against his insurer for coverage under a policy in New York state court.  Id. at 263.  After the coverage dispute was resolved, the insured instituted a second lawsuit against the insurer alleging fraud in the manner in which it defended itself in the first lawsuit.  Id. at 265.  The district court dismissed the second lawsuit as barred by res judicata.  See Jacobson v. Fireman's Fund Ins. Co., 1996 U.S. Dist. Lexis 5532 (S.D.N.Y. Apr. 16, 1996).  The Second Circuit applied New York's functional approach to res judicata and held that Jacobson's "claims undeniably arise out

8

of the same factual grouping as those he advanced in the state court, and his present suit merely asserts different legal theories to obtain additional relief from the very same defendant, for the identical injuries." Jacobson, 111 F.3d at 265.

Just as in Jacobson, LA Limo's claim for breach of the covenant of good faith and fair dealing arises out of the same facts as its coverage dispute in the State Farm case, and merely asserts a different legal theory to obtain additional relief from Liberty Mutual for the same injuries. LA Limo argues that its bad faith claim is based on facts unavailable at the time it filed the third-party complaint in the State Farm action and res judicata does not apply.[1] Not only is this argument contrary to the court's findings in Jacobson, but also against the policy behind res judicata. "The doctrine of res judicata, or claim preclusion, is designed to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Insurance Co. of the State of Pa. v. HSBC Bank USA, 10 N.Y.3d 32,

---

[1] LA Limo also argues that New York's impleader statute prevented it from asserting a bad faith claim in the State Farm action and res judicata is inapplicable. See N.Y. C.P.L.R. § 1007. The very cases it cites in support prove the argument to be without merit. See George Cohen Agency, Inc. v. Donald S. Perlman Agency, Inc., 51 N.Y.2d 358, 365 (N.Y. 1980) ("The language of CPLR 1007 serves only to identify the persons against whom a third-party claim may be brought. It places no limit upon the amount which may be recovered or upon the legal theories which may be asserted as a basis for the claim. Indeed, a narrower reading would subvert the purpose of the statute. It has long been clear that one of the main purposes of third-party practice is the avoidance of multiplicity and circuity of action, and the determination of the primary liability as well as the ultimate liability in one proceeding, whenever convenient.).

35 (N.Y. 2008) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)). LA Limo had several options available in the State Farm case to address new facts brought to light by Liberty Mutual's defense, including amending the complaint to assert a bad faith claim or moving for sanctions against its attorneys for any alleged improprieties in discovery surrounding endorsement 14. It did not.

LA Limo had a full and fair opportunity to litigate its contract based claims against Liberty Mutual in the State Farm case. It cannot now attempt to revisit the issue and pursue additional forms of relief. As there are no disputed issues of fact material to the application of the doctrine of res judicata, and that doctrine clearly preclude's LA Limo's bad faith claim, the motion for summary judgment is GRANTED.

### IV. Conclusion

Based on the above reasoning, Liberty Mutual's motion for summary judgment is granted. LA Limo could have, and should have, asserted its bad faith claim in the New York action. Its current claim for bad faith is therefore barred by res judicata. The clerk shall terminate this action.

IT IS SO ORDERED.

/s/

Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: August 14, 2008.